# EXHIBIT A

# BIDDING PROCEDURES

The following procedures (these "Bidding Procedures") shall govern the auction (the "Auction") for the sale (the "Sale") by PPI Holdings LLC ("PPI" and together with its affiliated debtors-in-possession in these jointly administered cases, the "Debtors") of the Assets (as that term is defined in the Motion of Debtors for Entry of Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code: (A) Approving Bidding Procedures; (B) Scheduling an Auction; (C) Approving an Expense Reimbursement Fee for Bid Protection to a Stalking Horse Bidder; (D) Scheduling a Sale Hearing; (E) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (F) Approving the Debtors' Proposed Sale of Substantially all of their Assets (the "Sale Motion"). Following the Auction, the Debtors will seek the entry of an Order approving the Sale of the Assets to the Qualified Bidder determined by the Debtors to have made the highest and best bid if such bid is determined by the Debtors, in their sole discretion, to provide a net benefit to the Debtors' estate no less than the amounts the Debtors estimate would be received upon an orderly liquidation value of the Assets (the "Successful Bidder").

These Bidding Procedures have been approved and authorized by an Order of the Honorable Kevin Gross, United States Bankruptcy Judge, entered on January __, 2009 (the "Bidding Procedures Order"). Pursuant to the Bidding Procedures Order, the Debtors have and hereby reserve the right to amend these Bidding Procedures as they determine to be in the best interests of the Debtors, their estates and creditors, after consultation with General Electric Capital Corporation ("GECC"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), General Motors Corporation ("GM"), Ford Company ("Ford") and Chrysler LLC ("Chrysler," and together with GM and Ford, the "Customers").

  **A.**   **Assets to be Sold**. The Debtors are offering to sell the Assets, together or separately, to one or more bidders. The Assets are as defined in, and described in greater detail in, the Sale Motion. All capitalized terms not otherwise defined in these Bidding Procedures have the meaning ascribed to them in the Sale Motion.

  **B.**   **Notice**. The Debtors have developed a list of parties whom the Debtors believe may potentially be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a purchase of the Assets (each, individually, a "Contact Party," and collectively, the "Contact Parties"). Within two (2) business days after the entry of the Bidding Procedures Order, the Debtors will send notice of the proposed Sale, the process for obtaining diligence materials, the process for qualifying as a bidder, the due date for bids and the proposed time and date of the Auction to the Contact Parties and other parties in interest and prospects that have or may be identified as potential bidders for the Purchased Assets.

  **C.**   **Data Room and Access to Information.** Information relevant to the Assets for evaluation by Contact Parties, including certain books and records, material contracts and other financial and operational information for due diligence investigation, will be made available to Contact Parties who have executed an acceptable confidentiality agreement. Specific due diligence information will be provided after execution of such agreements.

**D. Stalking Horse Bidder and Bid Protections**. On or before January 30, 2008, the Debtors in their discretion may execute and file with the Court, as a supplemental exhibit to the Sale Motion, subject to Court approval pursuant to the Sale Motion, a fully-executed Asset Purchase Agreement for the sale of the Assets to a bidder (the "Stalking Horse Bidder") whom the Debtors reasonably determines, after consultation with GECC, the Committee and the Customers, to have the financial and other capabilities to consummate the transactions contemplated by the Sale Motion, on terms acceptable to the Debtors (a "Stalking Horse APA"). The Stalking Horse Bidder shall be deemed to be a Qualified Bidder for purposes of participation in the Auction, and the Stalking Horse Bid shall be deemed to be a Qualified Bid for purposes of the Auction.

**E. Qualified Bidders**. To be eligible to participate in the Auction, a potential bidder must be a "Qualified Bidder". A Qualified Bidder is a person or entity:

i. who has delivered to Debtors an executed confidentiality agreement(s) in form and substance acceptable to Debtors;

ii. who has delivered to Debtors on or before the Bid Deadline (as defined herein) a bid that meets the criteria for a Qualified Bid (as defined herein), accompanied by a cover letter from such person or entity stating that (i) the bidder is prepared to enter into and consummate the transactions in accordance with the terms of the Modified APA (as defined herein) submitted by the bidder, after approval by the Bankruptcy Court, (ii) the bidder's appearance at the Auction will constitute a waiver of any due diligence or financing contingencies of any kind contained in the Modified APA submitted by the bidder, and (iii) such bidder's offer is irrevocable until the date that is the earlier of twenty (20) days after the conclusion of the Sale Hearing with respect to the Assets or the closing of the Debtors' sale of the Assets to another purchaser.

iii. who has delivered to the Debtors on or before the Bid Deadline such financial and other information as will allow the Debtors to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA, including, without limitation, financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code (if applicable), and evidence of debt and/or equity funding commitments or other financial resources readily available and sufficient in the aggregate to finance the purchase of the Assets, in a form requested by and reasonably satisfactory to the Debtors;

iv. who possesses the financial capabilities, business plan and management structure to effect the acquisition of and operation of the Debtors' manufacturing plants in the reasonable business judgment of the respective Customer; and (b) would agree to assume the Customers' purchase orders with Debtors without modification, or on other terms acceptable in its absolute discretion to the respective Customer; and

v. whose financial information and credit-quality support demonstrate a financial capability to consummate the purchase of the Assets and whom the Debtors in the good faith exercise of their business judgment determine is reasonably likely (based on availability of

financing, experience and other considerations) to be able to consummate a transaction if selected as the Successful Bidder

   **F.**  **Qualified Bids.** Each bidder who is not the Stalking Horse Bidder must submit a binding written offer to purchase all or some of the Assets to the Debtors, with a copy to counsel to the Creditors' Committee, that satisfies each of the following conditions (a "Qualified Bid"):

   i. the bidder must submit (a) a clean signed and binding asset purchase agreement substantially in the form of the Stalking Horse APA or, if no Stalking Horse APA has been filed by the Debtors, the Asset Purchase Agreement that is filed by the Debtors as a supplemental exhibit to the Sale Motion ("Modified APA"), and (b) a blacklined asset purchase agreement reflecting the differences between the Modified Asset Purchase Agreement and Stalking Horse APA or, if no Stalking Horse APA has been filed by the Debtors, the Asset Purchase Agreement that is filed by the Debtors as a supplemental exhibit to the Sale Motion;

   ii. if a Stalking Horse APA has been filed, the bidder's offer must provide a purchase price for the Assets that exceeds the purchase price reflected in the Stalking Horse APA by at least six (6) percent (the "Initial Overbid Amount").

   iii. the bidder's offer must provide that the entire purchase price will be paid in cash at closing;

   iv. the bidder's offer must identify with particularity each executory contract and unexpired lease, the assumption and assignment of which is a condition to closing;

   v. the bidder's offer shall not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

   vi. the bidder's offer must fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

   vii. the bidder's offer shall not contain any due diligence or financing contingencies of any kind that such bidder is not prepared to waive prior to the Auction;

   viii. the bidder's offer must include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified APA;

   ix. the bidder's offer must be accompanied by a cash deposit equal to ten percent (10%) of the amount offered to purchase the Assets (the "Good Faith Deposit"); and

   x. the bidder's offer must be accompanied by clean and blacklined versions of a form of Sale Order of which the bidder would request approval at the Sale Hearing. The blacklined copy shall show the differences between the proposed Sale Order filed by the Debtors (or, if a revised form of proposed Sale Order has been filed with the Stalking Horse APA, such revised proposed Sale Order) and the bidder's proposed Sale Order.

The Debtors, after consultation with GECC and the Creditors' Committee, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualifying Bids by no later than 5:00 p.m. (prevailing Eastern time) on February 9, 2009. The Debtors reserve the right, however, in their discretion, to waive any of the foregoing requirements and to deem a bid as a Qualified Bid.

G. **Deadline for Submission of Bids**: All Qualified Bids must be submitted by no later than 4:00 p.m. (prevailing Eastern Time) on February 6, 2009 (the "Bid Deadline") to:

The Debtors:

PPI Holdings, Inc.
2129 Austin Avenue
Rochester Hills, MI 48309
Email:
Facsimile:
Attn: Michael Putz


Pepper Hamilton LLP
100 Renaissance Center, Suite 3600
Detroit, MI 48243-1157
Facsimile:    313—259-7926
Email: hertzbergr@pepperlaw.com
Attention:    Robert S. Hertzberg, Esq.

Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Email: fournierd@pepperlaw.com
Attention:    David M. Fournier, Esq.

**Creditors' Committee:**

Stevens & Lee. P.A.
1105 North Market Street, 7th Floor
Wilmington, DE 19801
Facsimile:    302-654-5181
Email: jhh@stevenslee.com
Attention:    Joseph H. Huston, Jr., Esquire

H. **No Competing Qualified Bids**: If two (2) or more Qualified Bids are not submitted by the Bid Deadline, the Debtors shall not hold the Auction. The Debtors may, however, in their discretion, request at the Sale Hearing that the Court approve the Sale of the

Assets to a bidder that submits a Qualified Bid that the Debtors determine, after consultation with the Creditors' Committee and GECC, and in the reasonable exercise of their business judgment, to be acceptable.

      **I.**    **Auction:** If the Debtors timely receive at least two (2) Qualified Bids, the Debtors shall conduct an Auction with respect to the Assets, unless the Debtors, after consultation with the Creditors' Committee and GECC, determine in the reasonable exercise of their business judgment, that the Qualified Bids are inadequate and unacceptable and that cancelling the Auction, if held, would be in the best interest of the Debtors, the estates and creditors. The Auction will take place starting on February 10, 2008 at 10:00 a.m. The Auction will be conducted at the offices of Pepper Hamilton LLP, The New York Times Building, 37th Floor, 620 Eighth Avenue, New York, New York, 10018, or such other location as designated by the Debtors in a notice to all Qualified Bidders. The Auction shall be governed by the following procedures:

      i.    Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

      ii.    Only Qualified Bidders shall be entitled to participate in the Auction and make subsequent bids at the Auction. GECC, the Creditors' Committee and the Customers each shall be permitted to attend the Auction.

      iii.    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

      iv.    Prior to the commencement of the Auction, the Debtors shall notify the Qualified Bidders of the amount of the highest bid, as determined by the Debtors (the "Initial Highest Bid").

      v.    At the Auction, Qualified Bidders will be permitted to increase their bids (such increased Qualified Bid, a "Qualified Overbid"), provided that each such Qualified Overbid shall exceed the value to the Debtors' estates of the next highest bid by at least $100,000.

      vi.    The Debtors, in their business judgment, based, in part, on the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, the Assets sought to be purchased in the Qualified Bids, and such other information as may be relevant, may conduct the Auction in the manner they determine will better promote the goals of the bidding process and will achieve the maximum value for the Assets. Prior to the start of the Auction, the Debtors will inform the Qualified Bidders participating in the Auction of the manner in which the Auction will be conducted.

      vi.    The Debtors may in their discretion entertain Qualified Bids and Qualified Overbids for less than all of the Assets.

      vi.    Each Qualified Bidder shall have the right to submit Qualified Overbids on any Assets, and to make additional modifications to its Modified APA at the Auction in connection therewith.

vii. The Auction will be conducted so that each Qualified Bidder will be informed of the terms of the previous bid.

viii. At the conclusion of the Auction, the Debtors, in consultation with their professionals, representatives of GECC and representatives of the Committee, shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the bidding process, including those factors affecting the speed and certainty of consummating the proposed sale, liabilities being assumed, and shall identify the highest or otherwise best offer(s) for the Assets (the "Successful Bid(s)" and the bidder(s) making such bid(s), the "Successful Bidder(s)"). In determining the highest or best offer for the Assets, the Debtors will compare one or more Qualified Bids or Qualified Overbids against the Qualified Bid or Qualified Overbid of any Stalking Horse Bidder. At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Bankruptcy Court for approval. The Debtors' presentation of the announced Successful Bid(s) to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such Successful Bid(s). The Debtors shall have accepted a Successful Bid only when the Bankruptcy Court has approved such bid.

ix. Immediately upon conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made, and shall make and pay for any necessary filings with all applicable governmental or other authorities.

**J. The Sale Hearing.** The hearing to approve the Sale Motion (the "Sale Hearing") is presently scheduled to take place before the Honorable Kevin Gross, of the United States Bankruptcy Court for the District of Delaware at 824 North Market Street, 3rd Floor Wilmington, Delaware, 19801 Courtroom ___ at ____ __.m. (prevailing eastern time) on February ___, 2009. At the Sale Hearing, the Debtors will seek entry of an order, among other things, authorizing and approving the sale of the Assets to the Successful Bidder(s), as determined by the Debtors in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the relevant asset purchase agreement submitted by the Successful Bidder(s). The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.

**K. Back-Up Bids.** If the Court declines to approve a Successful Bid at the Sale Hearing, the Sale Hearing may be adjourned and the next highest or otherwise best Qualified Bid or Qualified Overbid with respect to the Assets in such bid, if and as determined by the Debtors, shall be deemed to be the Successful Bid with respect to the Assets and presented at such Adjourned Sale Hearing for approval by the Court. If any Successful Bidder whose bid has been approved by the Court fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid or Qualified Overbid with respect to the Assets in such bid, if and as determined by the Debtors, shall be deemed to be the Successful Bid with respect to the Assets and the Debtors may effectuate such sale without further order of the Bankruptcy Court. The Debtors shall retain all rights to Assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court.

**L.     Return of Good Faith Deposit.**  The deposits of all Qualified Bidders shall be retained by the Debtors, and all Qualified Bids and all Qualified Overbids made at the Auction, will remain open and irrevocable, notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of a Successful Bid, until the date that is the earlier of (the "<u>Return Date</u>") (i) the closing of the sale of the Assets or (ii) the 20th day after the conclusion of the Sale Hearing with respect to the sale of the Assets to the Successful Bidder.  On the Return Date, the Debtors shall return the deposits with accrued interest, if any, of all bidders who submitted bids in connection with the Assets (other than the Successful Bidders).  In addition to any other remedies available to the Debtors, the Debtors may retain the deposit of any Qualified Bidder who submits a Successful Bid who breaches or fails to perform any of its obligations pursuant to these Bidding Procedures or its Successful Bid.

**M.     Reservation of Rights.**  The Debtors reserve all rights to terminate the Bidding Process at any time if the Debtors determine, in their business judgment, that the Bidding Process will not maximize the value of the Debtors' bankruptcy estates, subject to payment of the Termination Fee.  In addition, the Debtors reserve all rights not to submit any bid that is not acceptable to the Debtors for approval to the Bankruptcy Court.  The Debtors shall further have the right to amend the rules set forth herein for the Bidding Process or impose such other terms and conditions for the Bidding Process which the Debtors determine, in their business judgment, is necessary for it to fulfill its fiduciary duties provided that such modifications are not inconsistent with any Bankruptcy Court order.  Without limiting the generality of the foregoing, the Debtors may reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in the Debtors' discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors, their estates and creditors.