## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PPI Holdings, Inc., *et al.,* | Case No. 08-13289 (KG) (Jointly Administered) |
| Debtors. | **Hearing Date:  TBD (expedited hearing requested)** **Objections Due:  TBD** |

### MOTION TO ENFORCE SALE ORDER AND CONFIRMATION INJUNCTION

Edward T. Gavin, CTP, (the "Trustee"), duly-appointed trustee of The PPI Liquidating Trust (the "Trust), moves the Court to enter an order enforcing the terms of the Order approving the sale of assets conveyed to Revstone Industries LLC ("Revstone"),  the purchaser of certain of the assets of Debtors PPI Holdings, Inc., *et al.,* (the "Debtors"), and enjoining Revstone from interfering with assets which were excluded from that sale; in particular the Debtors' bankruptcy proofs of claim against Sturgis Iron & Metal Co., Inc. ("Sturgis"), which were among the assets specifically excluded from the asset purchase.  In support thereof the Trustee represents as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334(b) and 157(b)(1) and (2).

2.      Venue is proper in the district pursuant to 28 U.S.C. §1409(a).

### INTRODUCTION

3.      On December 12, 2008 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

SL1 1189269v1 104241.00028

4.      On October 28, 2011, the Court entered its order [Docket No. 1563] (the

"Confirmation Order") confirming the Joint Chapter 11 Plan of Liquidation by the Debtors and

the Official Committee of Unsecured Creditors Dated as of September 10, 2010 (the "Plan").

Pursuant to the terms of the Plan and the Confirmation Order, the effective date of the Plan

occurred on November 15, 2011 (the "Effective Date").

5.      On the Effective Date, the Trustee was appointed as trustee of the Trust, and the

assets of PPI were transferred to the Trust.

### THE STURGIS CLAIMS

6.      On July 22, 2008, Skill Tool & Die ("Skill"), one of the Debtors, filed a proof of

claim designated as Claim No. 381-2 (the "Skill Claim") in Sturgis' bankruptcy case, Case No.

08-02966 in the Western District of Michigan (the "Sturgis Bankruptcy Case").  A copy of the

Skill Claim is attached as Exhibit A.

7.      On that same date, MPI International, Inc. ("MPI"), another of the Debtors, filed a

proof of claim designated as Claim No. 382-2 in the Sturgis Bankruptcy Case (the "MPI Claim"

and collectively with the Skill Claim, the "Sturgis Claims").  A copy of the MPI Claim is

attached as Exhibit B.

8.      In June 2012, the Trustee sold and assigned his interests in the Sturgis Claims to

Argo Partners ("Argo").  Pursuant to Bankruptcy Rule 3001(e)(2), Argo promptly filed Notices

of the transfer of the Sturgis Claims on June 11, 2012 in the Sturgis Bankruptcy Case [Docket

Nos. 2808 and 2810] (the "Transfer Notices"), copies of which are attached as Exhibit C.  No

objections were filed to the Transfer Notices.

9.      Although Revstone had at no time in the past appeared in the Sturgis Bankruptcy

Case, asserted rights in the Sturgis Claims, or objected to the Transfer Notices, it has now

SL1 1189269v1 104241.00028

asserted that the Sturgis Claims were conveyed to it as "Accounts Receivable" under the Asset Purchase Agreement approved by this Court's order approving the sale of the Debtors' assets described below.

### THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

10.    On March 12, 2009, the Court entered an Order Approving Motion of Debtors for Entry of an *Order (A) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (B) Approving the Debtors' Proposed Sale of Substantially All of their Assets* [Docket No. 391] (the "Sale Order").  The Sale Order approved the sale of substantially all of the Debtors' assets to Cerion, LLC pursuant to an Asset Purchase Agreement dated February 20, 2009 (the "APA").  A copy of the APA (less exhibits and schedules) is attached as Exhibit D.  Subsequent to the Sale Order, Cerion, LLC transferred its interest in the APA to Revstone.

11.    The APA specifically excluded from the sale as "Excluded Assets" "any and all Claims, counterclaims and demands of the [Debtors] . . . ."  APA §2.2(b).  The term "Claim" is defined in the APA as "any claim, lawsuit, cause of action, demand, suit, inquiry made, hearing, investigation, notice of violation, litigation, proceeding, arbitration, or other dispute, whether civil, criminal, administrative or otherwise."  APA §1.1.  The Sturgis Claims were clearly "Claims" pending of record in the Sturgis Bankruptcy Case as of the date of the APA and were thus "Excluded Assets."

### THE REVSTONE DISPUTE

12.    On August 7, 2012, on the eve of the final distribution on the Sturgis Claims, the Trustee received an email from Daniel Smith, general counsel for Revstone, in which Revstone asserted for the first time that it was the owner of the Sturgis Claims by virtue of the APA, and

- 3 -

objected to any distributions from the Sturgis Bankruptcy Case to Argo.  Specifically, Revstone

argues that the Sturgis Claims were included as "Accounts Receivable," which were sold by the

Debtors under the APA,  APA §2.1(h).

13.    Based on this dispute, the trustee for the Sturgis Bankruptcy Case is withholding

payment on account of the claims until the dispute is resolved.

14.    Further, PPI's Trustee  is preparing to make final distributions in these cases and

close them.  In fact, the Trustee was prepared to make the final distribution the week he received

the correspondence from Revstone.  Until this dispute is resolved, he cannot make a distribution

of the funds received on account of the sale of the Sturgis Claims to Argo.  As such, the

distribution is delayed.

15.    The Sturgis Claims were not conveyed under the APA and remained property of

the Debtors' estates.  They were thus properly conveyed to Argo, and Revstone's actions violate

the injunction provisions of the Confirmation Order and threaten the pending distribution to the

Debtors' unsecured creditors.

## RELIEF REQUESTED

16.    By this Motion, in accordance with the Court's inherent authority to interpret and

enforce its own orders, the Trustee requests that the Court enforce the terms of the APA

approved by the Sale Order, and enjoin Revstone from interfering with the distributions on the

Sturgis Claims.

17.    It is fundamental that a court has the inherent authority to interpret and enforce its

own orders. In re TWA Inc. Post Confirmation Estate, 2007 Bankr. LEXIS 3182, * 8-10 (Bankr.

Del. 2007); see also, Heartland Hospital v. Thompson, 328 F. Supp. 2d 8, 11-12 (D. D.C. 2004),

aff'd, 415 F.3d 24 (2005) ("Within a court's power to administer its decrees is the power to

- 4 -

construe and interpret the language of the judgment"); Chandler v. State of Oklahoma ex rel.

Oklahoma Tax Commission (In re Chandler), 251 B.R. 872, 877 fn. 5(B.A.P. 10th Cir. 2000)

("[I]t is well-settled that bankruptcy courts have the power to interpret and enforce their

orders.").

       18.     Moreover, in the Sale Order, the Court retained exclusive jurisdiction to "resolve

any controversy or claim arising out of or related to this Sale Order, the Asset Purchase

Agreement or any related agreements, including without limitation: (a) any actual or alleged

breach or violation of this Sale Order, the Asset Purchase Agreement or any related agreements

and (b) the enforcement of any injunctive provision or relief granted in this Sale Order or

otherwise, as set forth in the Asset Purchase Agreement."  Sale Order ¶14; *see also*, In re Nortel

Networks Corp., 445 B.R. 370, 375 (Bankr. D. Del. 2011) (Gross, J.) (sale order with similar

language "compels the Court to act in its supervisory and enforcement roles . . .").

       19.     As stated above, the APA is clear on its face that "Claims" were excluded from

the assets sold by the Debtors.

> Clear and unambiguous language in a contract should be given its ordinary and
> usual meaning. *See Johnston v. Tally Ho, Inc.,* 303 A.2d 677, 679 (Del. Super.
> 1973). Absent some ambiguity, Delaware courts will not destroy or twist policy
> language under the guise of construing it. *Hallowell v. State Farm Mut. Auto. Ins.
> Co.,* 443 A.2d 925, 926 (Del. 1982). [W]hen the language of [a contract] is clear
> and unequivocal, a party will be bound by its plain meaning because creating an
> ambiguity where none exists could, in effect, create a new contract with rights,
> liabilities and duties to which the parties had not assented." *Id.*

Atwood Mobile Prod., LLC v. Dura Auto. Sys., Inc. (In re Dura Auto. Sys., Inc.), 2010 WL

180249, at *3 (D. Del. Jan 19, 2010).

       20.     Revstone's lack of action to pursue the Sturgis Claims as its own speaks volumes

of its agreement.  Even were the contrary so, Revstone's actions in forwarding offers to purchase

SL1 1189269v1 104241.00028

the Sturgis Claims and failure to object to Argo's duly filed Transfer Notices estop Revstone from now asserting its alleged rights.

21.    Revstone has admitted that the Sturgis Claims were rightfully property of the Debtors, and thus could be sold by the Trustee.  On no less than four occasions, one Larry Rouhib, Accounting Manager for Revstone, forwarded information to the Trustee regarding offers to purchase the Sturgis Claims, including the offers by Argo.  Copies of the emails, without attachments, are attached as Exhibit E.  Revstone obviously believed that PPI's estate was the owner of those Claims because: (a) it never did anything to pursue them in the Sturgis Bankruptcy Case; and (b) when Mr. Rouhib began to receive solicitations to purchase the Claims, he very kindly wrote emails to the Trust, alerting it to the various offers, stating, among other things, "Sturgis went bankrupt under MPI International Inc. so I believe this belongs to you," and following up to be sure his email was received by the Trust: "Since this is such a big number, I would just like to know that you did receive my email."  Had Revstone believed that it was the owner of the Sturgis Claims: (a) it would have pursued them in the Sturgis Bankruptcy Case; and (b) it would not have forwarded those offers to the Trustee, but instead would have acted on them itself.

22.    Revstone has asserted that since it purchased MPI's and Skill's accounts receivable, which the Trustee certainly concedes, it has the right to any distribution on account of the Sturgis Claims.  However, the APA is dated February 20, 2009, and the sale closed on March 25, 2009.  Sturgis filed for bankruptcy in 2008.  Once Sturgis filed, MPI and Skill had "Claims" as defined in the Bankruptcy Code (and the APA) against the bankrupt estate.  MPI and Skill timely filed proofs of claim in June 2008, and the claims were subsequently allowed.  The Sturgis Claims remained property of the Debtors' estates and were properly conveyed to Argo.

SL1 1189269v1 104241.00028

23.     Furthermore, if Revstone believed that the Sturgis Claims were transferred to it, it would have filed the notice required by Bankruptcy Rule 3001(e)(4) in the Sturgis Bankruptcy Case. Yet at no time in the 3-1/2 years since the closing on the APA did it do so, and thus it failed to perfect any purported transfer. Failure of a party to file a notice of transfer is fatal, particularly where another party or parties relied on the absence of the notice in acting or not acting. For a valid transfer of claim to occur, Bankruptcy Rule 3001(e) must be followed. *In re Hoffman,* 98 B.R. 783, 784 (Bankr. S.D. Ohio 1989) ('[T]he purpose for the rule is to prevent the fraudulent transfer of claims for the purpose of receiving unwarranted dividends and the requirement must be fulfilled.'). "Rule 3001(e)(2) is more than a simple housekeeping rule.... [F]ailure to file notice of transfer of claim is not a defect which cannot be cured." *In re Ellington,* 151 B.R. 90, 99 (W.D. TX 1993). "When a party fails to file a statement of transfer of claim, that party proceeds at its own risk...." *Id.* at 96. "The use of the word 'shall' in Rule 3001(e)(2) indicates that Congress considered the filing of such notice to be mandatory." *In re Wilson*, 96 B.R. 257, 261 (B.A.P. 9th Cir.1988). The plain and ordinary meaning of the word "shall" is that something is mandatory, not optional. *See, e.g., Blessing v. Freestone*, 520 U.S. 329, 341(1997). Even courts which have adopted a less rigorous test recognize that where parties act to their detriment in reliance on the absence of a properly filed 3001(e) notice, the party who failed to file must bear the brunt. *See*, *e.g., In re Kreisler*, 546 F.3d 863, 868 (7th Cir. 2008).

24.     Finally, at no time after the Trust's sale of the Sturgis Claims to Argo in June 2012 did Revstone file an objection to Argo's timely and contemporaneously filed Transfer Notices. Accordingly, Revstone's interference with the distributions on the properly-conveyed Sturgis Claims violates the injunction provisions of the Confirmation Order and should be

SL1 1189269v1 104241.00028

enjoined.  Specifically, paragraph 4 of the Confirmation Order approves the injunction contained

in Article 11 of the Plan, including but not limited to the following:

> Upon the entry of the Confirmation Order, all Holders of Claims and Interests and
> other parties in interest, including the Debtors, along with the respective present
> and former employees, agents, officers, directors, or principals, shall be enjoined
> from taking any actions to interfere with the implementation or consummation of
> this Plan.

Plan, Article 11(B).  Revstone's interference is in direct violation of this provision and should be

enjoined.

26.     Even if the contractual and legal analyses above were wrong, however, Revstone

is estopped from asserting any rights in the Sturgis Claims because the Trust relied in fact on Mr.

Rouhib's actions and Revstone's lack of action recited above in making distributions in its own

case, calculated on the amount paid by Argo.  Not until the email to the Sturgis Trust in early

August 2012 was anyone on notice that Revstone asserted an interest in or ownership of the

Sturgis Claims. In addition, both the Trustee and Argo relied on the complete absence of any

claim of right by Revstone, and on Revstone's own referral of Argo's offer to the Trust in

consummating the sale of the Sturgis Claims to Argo and making distributions to the Debtors'

administrative creditors.  If the Trust were now required to repay Argo the purchase price, the

unsecured creditors in this case would be deprived of the distribution anticipated by the

confirmed Plan and would thus be irreparably harmed because there is at this point no other

source of payment.

26.     Accordingly, the Trustee asks the Court to interpret and enforce the Sale Order,

the APA and related documents, and enforce the injunction provisions of the Confirmation

Order.

WHEREFORE, the Trustee respectfully requests that the Court: (a) interpret and enforce its prior Sale Order, the APA and related documents by determining that the Sturgis Claims were not included as part of the assets sold under the APA, (b) enjoin Revstone's interference with the distributions on the Sturgis Claims; and (c) grant such other relief as is proper.

Dated:    September 7, 2012                     Respectfully submitted,
                                                STEVENS & LEE, P.C.

                                                    /s/ *Joseph H. Huston, Jr.*
                                                Joseph H. Huston, Jr. (No. 4035)
                                                Maria Aprile Sawczuk (No. 3320)
                                                1105 N. Market Street, 7th Floor
                                                Wilmington, DE  19801
                                                Telephone: (302) 425-3310 -3306
                                                Telecopier: (610) 371-7972
                                                Email: jhh/masa@stevenslee.com

                                                *Counsel for the PPI Liquidating Trust*

SL1 1189269v1 104241.00028